DINSMORE v. PHILADELPHIA, ETC., R. CO. See Case No. 2,331.

DINSMORE (WOODWARD v.). See Case No. 18,003.

DINWIDDIE (BASS v.). See Case No. 1,092.

DIRECTORS OF CITY SCHOOLS (BERTONNEAU v.). See Case No. 1,361.

---

## Case No. 3,922.

### The DISCO.

[2 Sawy. 474;[1] 6 Chi. Leg. News, 102.]

District Court, D. Oregon. Nov. 15, 1873.

#### SHIPPING ARTICLES—AMBIGUITY.

1. Articles describing a voyage from England to the United States and back, *held* not to include ports on the Pacific coast.

2. Ambiguity in shipping articles ought to be resolved in favor of seaman, it being the duty of the master or owner to have such contracts couched in plain language.

DEADY, District Judge. This suit is brought by Frederick Small and seven others, against the British bark Disco, to recover a balance of wages alleged to be due them. It is admitted that the libellants are American citizens, and that they shipped on the Disco at Cardiff, Wales, in March, 1873, for the monthly wages of £3. That the bark sailed to Montevideo with a cargo of coals, and thence to Portland. Oregon, where she arrived October 31. The libellants allege that the master, in bringing them around Cape Horn, departed from the voyage agreed upon and described in the shipping articles, and therefore they are entitled to their discharge and wages.

The decision of the question at issue turns upon the construction to be given to the shipping articles. They describe the voyage as follows: "From the port of Cardiff, Wales, to any ports and places in the United States and British and foreign West Indies, and east side of South America and Gulf of Mexico, and back to a final port of discharge in the United Kingdom of Great Britain and British provinces. Term not to exceed twelve calendar months."

Subsequently the words "twelve calendar

months" were crossed out with scarlet-colored ink, and the words "two years and west coast of North or South America, and back to United Kingdom or continent of Europe," written thereafter in the same ink. This clause, if valid, justifies the voyage to Portland. But under section 163 of the shipping act of 17 & 18 Vict. it is void. That section provides: "That every erasure, interlineation or alteration in any such agreement (shipping articles) with seamen, * * * shall be wholly inoperative, unless proved to have been made with the consent of all the persons interested in such erasure, interlineation or alteration, by the written attestation of some shipping master, justice, officer of customs," etc.

There is no attestation upon these articles by any one upon this subject. The alteration stands unexplained, and, in the language of the act, is wholly inoperative. Do the articles, without the addition of these words, justify the voyage? For the libellants it is maintained that they do not, when fairly construed, while the contrary is urged on behalf of the claimant. Literally the voyage to Portland, Oregon, is within the language of the articles. This port is a place within the United States. But I do not think that an agreement made in England to make a voyage to the United States would, ordinarily, be understood as including a voyage around Cape Horn to the ports of the United States on the Pacific coast. Two circumstances tend strongly to show that such was the light in which these articles were understood by the parties to them, when entered into, at Cardiff, Wales. All the places mentioned, except the United States, lie wholly on the east side of the American continent. If it was understood that the vessel might make a voyage to San Francisco or Portland, as ports within the United States, why take the trouble to mention the east coast of South America, and thereby exclude the west coast of that country, when both coasts would lie in the line of a voyage to any port in the United States on the Pacific coast?

Whoever made this alteration in the articles is properly presumed to represent the owners. They have been in the custody of the ship. Now the very making of the alteration admits that the articles were insufficient to warrant the taking of the crew on a voyage to a port in the United States on the Pacific coast. Had it been otherwise, there was no necessity for making the alteration. The vessel was up for Montevideo when the crew shipped, and taking all the circumstances into consideration, I am well satisfied that the agreement was understood to limit the voyage of the ship to the eastern coast of the continent of America. See The Ada [Case No. 38].

Shipmasters and owners have ample means and facilities for putting their contracts with seamen in plain language; and

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

so the law of both Great Britain and America intends and requires. If, through negligence or design, they fail to do so, and allow or procure articles to be signed which are indefinite or ambiguous upon a matter of so much importance to the ·seamen, as the difference between a voyage across the Atlantic and around Cape Horn in the dead of an Antarctic winter, this court will resolve the matter in favor of the seamen and against the party in fault.

An order will be entered referring the case to a commissioner to hear the evidence, and state an account between the libellants and the vessel.